IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DOUGLAS E. CAMPBELL, JR.,               )
                                         )
                Plaintiff,               )
                                         )
        v.                               )    C.A. No. 24-1225-EGT
                                         )
FRANK BISIGNANO,                         )
Commissioner of Social Security,         )
                                         )
                Defendant.               )

## MEMORANDUM ORDER

Plaintiff Douglas E. Campbell, Jr. ("Plaintiff" or "Mr. Campbell") appeals from an unfavorable decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability benefits.[1]  (D.I. 2).  This Court has jurisdiction under 42 U.S.C. § 405(g).  The parties consented to entry of final judgment by the undersigned pursuant to 28 U.S.C. § 636.  (D.I. 10).

Presently before the Court are the parties' cross-motions for summary judgment.  (*See* D.I. 12 & 14).  For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED, and the Commissioner's cross-motion for summary judgment is GRANTED.

## I.    BACKGROUND

### A.    Procedural History

On December 31, 2020, Plaintiff filed for disability benefits with the Social Security Administration, alleging a disability onset date of November 10, 2020.  (Tr. at 68).[2]  His

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Frank Bisignano is automatically substituted for Commissioner Martin O'Malley as the Defendant.

[2]    Citations to "Tr." are to the Transcript of Social Security Proceedings filed in this case. (*See* D.I. 11).  Page numbers are found in the lower righthand corner of the transcript.

application was denied initially and upon reconsideration.  (*Id.* at 89-93 & 95-99).  A hearing was held on October 24, 2023 before Administrative Law Judge ("ALJ") Anthony Reeves.  (*Id.* at 45-66).  At that hearing and in writing, Plaintiff amended his alleged disability onset date to April 15, 2021.  (*Id.* at 52 & 205).  Plaintiff's date of last insured for disability benefits is September 30, 2025.  (*Id.* at 68).  The ALJ issued a decision on December 15, 2023, denying benefits on the basis that Plaintiff was not disabled during the relevant time period.  (*Id.* at 26-44).  On August 8, 2024, the Appeals Council denied Plaintiff's request for review of the ALJ's denial decision, thus rendering the ALJ's decision the final decision of the Commissioner.  (*Id.* at 13-18).

Plaintiff filed this action on November 6, 2024.  (D.I. 2).  Proceeding *in forma pauperis* (D.I. 9), Plaintiff filed his motion for summary judgment on February 4, 2025 (D.I. 12 & 13), and the Commissioner filed his cross-motion for summary judgment on March 6, 2025 (D.I. 14 & 15).  Plaintiff also filed a reply brief on March 12, 2025.  (D.I. 16).

**B.      Medical and Work History**

As of his amended date of disability onset (April 15, 2021), Plaintiff was 39 years old.  (Tr. at 38).  Plaintiff began having back problems in his early twenties and, over the years, developed significant problems with his legs.  (*Id*. at 794).  In 2019, Plaintiff had back surgery but continued to have symptoms of left leg pain, inability to feel his feet, difficulty with bending or moving, atrophy in left leg, right leg weakness and severe limp.  (*Id*. at 35).  During the ALJ hearing, Plaintiff testified that he uses a cane to walk, has experienced falls, can walk for ten to fifteen minutes, can sit for five minutes comfortably, cannot carry a gallon of milk and that his pain scale is seven out of ten (with medication).  (*Id*. at 35 & 56-62).  Plaintiff further testified that he does not sleep well due to nerve pain (*id*. at 60) and that, "on an average day, they awake, take their medication, lay around the house, and can no longer attend their daughter's activities" (*id*. at

2

35).  In a functional report, Plaintiff stated that he has difficulty squatting, reaching, kneeling and stair climbing.  (*Id*. at 35 & 222).  Lastly, Plaintiff's BMI ranges from 36.84 and 39.88, consistent with obesity, and he has anxiety and depression, which Plaintiff treated with medication prescribed by his primary care provider before discontinuing medication on his own.  (*Id*. at 32-33).

Plaintiff holds a high school diploma and last worked as a dump truck driver and heavy equipment mover from 2015 to 2021.  (Tr. at 37 & 55).

###    C.    The ALJ Proceedings and Findings

On December 15, 2023, the ALJ issued a decision denying Plaintiff benefits, concluding that Plaintiff was not under a qualifying disability at any time during the alleged onset date through the date last insured.  (Tr. at 38-39).  In doing so, the ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4).

The ALJ first found that Plaintiff had not engaged in substantial gainful activity during the relevant time (step one) and that Plaintiff had severe impairments (step two) in the form of "lumbar degenerative disc disease, neuropathy, atrophy of left calf, type II diabetes, and obesity."  (*Id*. at 31).  Finding that Plaintiff's mental impairments cause no more than a mild limitation in any of the four Paragraph B criteria,[3] however, the ALJ concluded that Plaintiff's mental impairments are not severe.  (*Id*. at 32-33).  Specifically evaluating Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)) and 11.14 (peripheral neuropathy), the ALJ determined that none of Plaintiff's impairments met the severity of those listed in Subpart P, Appendix 1 of 20 C.F.R. Part 404 (step three).  (*Id*. at 33-34).

---

[3]     The four Paragraph B criteria are understanding, remembering or applying information (Paragraph B1); interacting with others (Paragraph B2); concentrating, persisting or maintaining pace (Paragraph B3) and adapting or managing oneself (Paragraph B4).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(1)-(4).

After considering the record, including prior administrative findings of several state agency medical and psychological consultants, the ALJ found that Plaintiff has the residual functional capacity to "perform light work . . . except that they can lift 20 pounds occasionally and 10 pounds frequently; they can stand/walk four hours out of an eight-hour workday; they can sit six hours out of an eight-hour workday; the can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; they can occasionally balance, stoop, kneel, crouch, and crawl; they can tolerate frequent exposure to vibration and hazards such as machinery and heights."  (Tr. at 34).

Relevant to this appeal, the ALJ explained that the residual functional capacity determination did not reflect limitations in mental abilities because, according to the ALJ, Plaintiff's mild limitations in the four Paragraph B criteria are so slight that they do not result in any measurable loss of function in mental abilities.  (*Id*. at 33).  And with respect to Plaintiff's subjective symptoms, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms but explained that his statements with respect to intensity, persistence and limiting effects were "not entirely consistent" with the medical and other evidence of record.  (*Id*. at 35).

Based on the residual functional capacity determination and testimony from a vocational expert, the ALJ concluded that Plaintiff cannot perform his past relevant work (step four) but that he can perform other jobs that exist in significant numbers in the national economy (step five), including office helper, ticket seller and retail sales attendant.  (*Id*. at 37-39; *see also id*. at 63-66 (vocational expert testimony)).  As such, the ALJ determined that Plaintiff is not disabled.  (*Id*. at 39); *see also* 20 C.F.R. § 404.1520(a)(4)(v) ("If you can make an adjustment to other work, we will find that you are not disabled.").

## II.    LEGAL STANDARD

Courts review the Commissioner's factual findings for "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In reviewing whether substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also Zirsnak v. Colvin*, 777 F.3d 607, 610-11 (3d Cir. 2014).  In other words, reviewing courts must affirm the Commissioner if substantial evidence supports the Commissioner's decision, even if the court would have decided the case differently.

To determine if a claimant is disabled, the Commissioner follows a five-step sequential inquiry.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v).  The Third Circuit has explained this sequential analysis, and the shifting burdens that attend each step, in detail:

> The first two steps involve threshold determinations.  In step one, the Commissioner must determine whether the claimant currently is engaging in substantial gainful activity.  If a claimant is found to be engaging in substantial gainful activity, the disability claim will be denied.  In step two, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work.  If the impairment is equivalent to a listed impairment the disability claim is granted without further analysis.  If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  The claimant bears the burden of demonstrating an inability to return to his past relevant work.  If the claimant does not meet the burden the claim is denied.

5

> If the claimant is unable to resume his former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. The Commissioner must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his or her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled.

*Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (internal citations omitted). The analysis is identical whether an application seeks disability insurance benefits or supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

### III.    **DISCUSSION**

Plaintiff makes three arguments in support of his motion for summary judgment. First, Plaintiff argues that the ALJ's analysis of the medical opinion evidence of record is contrary to the record. (D.I. 13 at 4-7; D.I. 16 at 1-3). Second, Plaintiff argues that the ALJ erred in evaluating his mental health impairments. (D.I. 13 at 7-13; D.I. 16 at 3-4). And third, Plaintiff argues that the ALJ erred in evaluating his subjective symptoms. (D.I. 13 at 13-16; D.I. 16 at 4-6). The Court will address each argument in turn.

####    A.    **Analysis of the Medical Opinion Evidence of Record**

Plaintiff argues that the ALJ erred in relying on the prior administrative findings of state agency medical consultants Darrin Campo, MD, issued December 4, 2021 (Tr. at 68-74), and Vinod Kataria, MD, issued October 27, 2022 (*id*. at 76-82). (*See id*. at 37 (describing prior administrative findings)). First, Plaintiff argues that reliance on these medical opinions was improper because the medical consultants allegedly did not consider more recent medical evidence suggesting a worsening of Plaintiff's conditions. (D.I. 13 at 4-7; D.I. 16 at 1-3). Second, Plaintiff argues the ALJ's determination that Plaintiff can engage in "light" work is "inconsistent" with the

6

determinations of both Drs. Campo and Kataria that Plaintiff can only engage in less strenuous "sedentary" work.[4]  (D.I. 13 at 7 (citing 20 C.F.R. 404.1520c(c)(2)); D.I. 16 at 2-3); *see generally* 20 C.F.R. § 404.1567(a)-(b); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (defining "sedentary work" and "light work").  The Court disagrees.

Citing several Seventh Circuit decisions, Plaintiff argues that the ALJ erred in relying on the medical consultant's "outdated" reports because they "fail[ed] to capture 'later evidence containing new, significant medical diagnoses [that] reasonably could have changed the reviewing physician's opinion.'"  (D.I. 13 at 6 (quoting *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018))).  As an initial matter, those out-of-circuit decisions are not binding on this Court.  But more importantly, Plaintiff overlooks that "there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available."  *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) (citing 20 C.F.R. § 404.1527(f)(2)(i)); *see also Chandler*, 667 F.3d at 361 ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing

---

4    As stated above, the ALJ found that Plaintiff has "residual functional capacity to perform ***light work*** . . . except that they can lift 20 pounds occasionally and 10 pounds frequently; they can stand/walk four hours out of an eight-hour workday; they can sit six hours out of an eight-hour workday; the can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; they can occasionally balance, stoop, kneel, crouch, and crawl; they can tolerate frequent exposure to vibration and hazards such as machinery and heights." (Tr. at 34 (emphasis added)).  And Drs. Campo and Kataria concluded that Plaintiff has residual functional capacity to perform ***sedentary work***, except that Plaintiff can lift 20 pounds occasionally and 10 pounds frequently, can stand/walk four hours of an eight-hour workday, can sit six hours out of an eight-hour workday, can occasionally climb ramps and stairs, can never climb ladders, ropes or scaffolds, can frequently or occasionally balance, can occasionally stoop, kneel, crouch and crawl, and should avoid concentrated exposure to vibration and hazards such as machinery and heights.  (*Id*. at 71-73 & 79-81).

and decision.   The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").[5]

The Court is also unpersuaded that the medical evidence cited by Plaintiff constitutes "new, significant medical diagnoses" as was the case in the Seventh Circuit's *Lambert* decision.  (D.I. 13 at 5-7; D.I. 16 at 1-3).  Plaintiff refers to Exhibit 15F as containing a "2023 MRI," but the MRI in Exhibit 15F was taken nearly four years before the alleged April 2021 onset date.  (D.I. 13 at 5-7; Tr. at 776 ("Date of study: 5/4/17.  Date of report: 5/4/17")).  Plaintiff argues that the state agency medical consultants failed to consider Plaintiff's lower extremity neuropathy (D.I. 13 at 6-7), but Dr. Kataria's report clearly references Plaintiff's "neuropathy" (Tr. at 78; *see also id*. at 69 (Dr. Campo noting, "Nerve Damage in Feet")).   Similarly, Plaintiff points to his "reported problems with bending, changing positions, sitting, driving and walking" in Exhibits 9F and 10F as "[r]ecords the Agency did not consider."  (D.I. 16 at 2).  Neither record, however, was "new" or "significant" because both pre-dated Dr. Kataria's October 2022 medical opinion (*see* Tr. at 538 & 564), and Plaintiff's exertional and postural limitations (*e.g.*, his difficulties bending, sitting and walking) were discussed by both medical consultants (*see id*. at 71-72 & 79-80).   Plaintiff's argument that the state agency medical consultants failed to consider his obesity (D.I. 16 at 2) is also contradicted by medical records pre-dating both medical opinions that indicate obesity and by Dr. Kataria's specific identification of Plaintiff's obesity in his report.  (Tr. at 78 (Dr. Kataria

---

[5]      In his reply brief, Plaintiff argues that the language quoted from *Chandler* is no longer good law because that decision relied at least in part on the now-rescinded SSR 96-6p (D.I. 16 at 2), which also holds true for *Wilson*.  *Chandler*, 667 F.3d at 361 (citing SSR 96-6p, 1996 WL 374180 (July 2, 1996)); *Wilson*, 331 F. App'x at 919 (same).  Even if *Chandler* is no longer good law, the Social Security regulations still do not require an ALJ to seek an updated medical opinion when new medical evidence is obtained.  *Cf.* 20 C.F.R. § 404.1520c; SSR 18-01p, 2018 WL 4945639, at *6 (Oct. 2, 2018) ("The decision to call on the services of [a medical expert] is always at the ALJ's discretion.").

noting BMI of 39) & 476 (noting 39.88 BMI in September 2021)).  In other words, medical records and opinion evidence support the ALJ's decision; he was not impermissibly "playing doctor," as Plaintiff contends.  (*See* D.I. 13 at 15).

Finally, contrary to Plaintiff's suggestion, the ALJ's determination that Plaintiff can perform "light work" is not "inconsistent" with the determinations of Drs. Campo and Kataria that Plaintiff can perform at most "sedentary work."  (D.I. 13 at 7 (citing 20 C.F.R. § 404.1520c(c)(2)); D.I. 16 at 2).  The cited regulation does not render an ALJ's residual functional capacity determination erroneous when it differs slightly from a prior administrative finding.  *See* 20 C.F.R. § 404.1520c(c)(2) (prior administrative medical findings more persuasive when "more consistent" with medical and non-medical evidence).  Moreover, Plaintiff overlooks the fact that residual functional capacity is an issue specifically reserved for the Commissioner.  *Chandler*, 667 F.3d at 361 ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and [residual functional capacity] determinations.").  As such, the ALJ was not required to follow the determinations of Drs. Campo and Kataria and was also not required to provide any analysis with respect to their statements as to Plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1520b(c)(3)(v); *Taylor v. Comm'r Soc. Sec.*, No. 24-2940, 2025 WL 1732927, at *1 n.4 (3d Cir. June 23, 2025) ("Because these statements were reserved solely for the Commissioner, the ALJ was not required to provide any analysis.").

In sum, the ALJ's analysis of the medical opinion evidence of record meets the substantial evidence standard required by 42 U.S.C. § 405(g).

### B.    Evaluation of Plaintiff's Mental Health Impairments

Plaintiff next argues that the ALJ erred in finding (1) Plaintiff's mental impairments not severe at step two and (2) warranting of no limitations in the residual functional capacity at

9

step four.  (D.I. 13 at 7-13; D.I. 16 at 3-4).  In response, the Commissioner argues that the ALJ's determination with respect to Plaintiff's mental impairments is supported by substantial evidence and, further, that any error in finding them not severe would be harmless.  (D.I. 15 at 10-12).  The Court agrees with the Commissioner.

First, the ALJ's determination that Plaintiff's mental impairments are not severe is supported by substantial evidence.  *See* 20 C.F.R. § 404.1522.  State agency psychologist Alex Siegal, Ph.D., found that Plaintiff's medically determinable mental impairments – namely, his anxiety and depression – cause no more than "mild" limitation in any functional areas, concluding that "[t]here is nothing in the [medical evidence of record] to indicate that claimant's mental impairment is so severe as to prevent the claimant from working."  (Tr. at 70-71); *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1522).").  Christopher King, Psy.D., another state agency psychological consultant, affirmed Dr. Siegal's determination.  (*Id*. at 78).  The ALJ explained that the opinions of Drs. Siegal and King were persuasive because the opinions were supported by explanation and consistent with medical and non-medical evidence of record.  (*Id*. at 37); *see also* 20 C.F.R. § 404.1520c(b)(2) (defining supportability and consistency as the "[m]ost important factors" to consider when evaluating a prior administrative medical finding).

Plaintiff points to his history of anxiety and depression and corresponding prescribed medications as evidence the ALJ allegedly overlooked (*see* D.I. 13 at 9); the ALJ, however, considered and discussed Plaintiff's history of anxiety and depression and medication history in concluding that Plaintiff's mental impairments are not severe.  (*See* Tr. at 37 ("The claimant has

10

anxiety and depression with medication prescribed by their primary care provider. At times, the claimant reported medication works well and other times reported worsening in symptoms, but despite waxing and waning of symptoms, mental status exams have been normal since the alleged onset date . . . ." (citations omitted)). Although the ALJ did not expressly identify every medication that Plaintiff has tried to treat his anxiety and depression, the ALJ's evaluation was sufficient. *See Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." (citations omitted)).

Plaintiff cites another Seventh Circuit decision to argue that his diagnosis of moderate major depression is necessarily a severe impairment. (D.I. 13 at 11 (citing *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016))). But that case is not binding on this Court and, in any event, did not impose a categorical rule that diagnoses of major depression are necessarily severe.[6] *See O'Connor-Spinner*, 832 F.3d at 697. Unlike the claimant in *O'Connor-Spinner*, who was diagnosed with "major depression, recurrent severe," *id*., Plaintiff here was diagnosed with "Major depressive disorder, single episode, moderate" (Tr. at 438). Although the step-two inquiry is a "*de minimis* screening device to dispose of groundless claims," *Newell*, 347 F.3d at 546, Plaintiff has

---

[6]   In *Magwood*, the Third Circuit held that an ALJ erred in concluding that the claimant's mental impairments of major depression and alcohol abuse disorder were not sufficiently severe to satisfy step two's *de minimis* threshold. *Magwood v. Comm'r of Soc. Sec.*, 417 F. App'x 130, 132-33 (3d Cir. 2008). Like *Lambert*, *Magwood* did not impose a categorical rule that major depression is necessarily severe. *See Magwood*, 417 F. App'x at 132. But unlike *Magwood*, the ALJ here did not stop at step two but instead considered Plaintiff's mental impairments at steps three through five; thus, any alleged error in the ALJ's step-two analysis was rendered harmless. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005))).

identified no evidence that compels a conclusion different than the one reached by the ALJ regarding the non-severity of Plaintiff's mental impairments. *See Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) ("Neither the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.").

Next, Plaintiff argues that the ALJ erred by not including a limitation from his mental impairments in the residual functional capacity assessment (and corresponding hypothetical question posed to the vocational expert). (D.I. 13 at 12-13). But Plaintiff overlooks the fact that, in the Third Circuit, "the findings at steps two and three are important to the ALJ's statement of a claimant's limitation but do not require the use of any particular language." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019); *see also Jennifer J. v. Bisignano*, No. CV 24-1863, 2025 WL 1435628, at *6-7 (E.D. Pa. May 19, 2025). Instead, the residual functional capacity assessment and corresponding hypothetical question to the vocational expert "must be sufficient to reflect all of a claimant's impairments." *Hess*, 931 F.3d at 210. In *Hess*, "the Third Circuit indicated in dicta that an ALJ could omit a claimant's limitations from the [residual functional capacity] if the ALJ provided a 'valid explanation.'" *Charlier v. Kijakazi*, C.A. No. 20-1327-CFC, 2022 WL 1770336, at *3 (D. Del. June 1, 2022) (citing *Hess*, 931 F.3d at 211).

Here, the ALJ provided a valid explanation for excluding Plaintiff's mental impairments from the residual functional capacity assessment and corresponding hypothetical question to the vocational expert. Evaluating the medical evidence of record and opinions of Drs. Siegal and King, the ALJ concluded that Plaintiff has a mild limitation of understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace and adapting or managing oneself. (Tr. at 32-33). The ALJ concluded that Plaintiff's "mild 'paragraph' B limitations are so slight that they do not result in any measurable loss of function in

12

mental abilities" and that consequently "the residual functional capacity does not reflect any limitation in mental abilities." (Tr. at 33). The ALJ's explanation was sufficient. *See Charlier*, 2022 WL 1770336, at *3 ("[T]he ALJ gave a sufficient explanation for his omission of Charlier's 'mild' mental health limitations from the RFC."); *see also Jennifer J.*, 2025 WL 1435628, at *7; *Kring-Schreifels v. Kijakazi*, No. CV 22-110, 2023 WL 3097210, at *7 (E.D. Pa. Apr. 26, 2023).

Accordingly, the ALJ's evaluation of Plaintiff's mental impairments meets the substantial evidence standard required by 42 U.S.C. § 405(g).

## C.    Evaluation of Plaintiff's Subjective Symptoms

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's subjective symptoms, particularly in that the ALJ failed to properly apply the two-step test articulated in SSR 16-3p and 20 C.F.R. § 404.1529. (D.I. 13 at 13-16; D.I. 16 at 4-6). The Commissioner responds that the ALJ adequately evaluated Plaintiff's subjective symptoms under the "not high" substantial evidence standard. (D.I. 15 at 12-14 (quoting *Biestek*, 587 U.S. at 103)). The Court agrees with the Commissioner.

SSR 16-3p requires the ALJ to first "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain" and to then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently, appropriately, and effectively." SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. The ALJ here did that. As set forth above in Section I.C, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the ALJ also determined that Plaintiff's statements as to intensity, persistence and limiting effects were

13

"not entirely consistent" with the medical and other evidence of record.  (Tr. at 35; *see also id.* at 35-36 (Plaintiff's subjective symptoms "not fully supported" by objective or opinion evidence)).

As to the ALJ's statement that Plaintiff treated his back pain and left lower extremity atrophy "conservatively" with medication prescribed in February 2022 (Tr. at 36), Plaintiff states that the ALJ failed to identify what more aggressive treatment Plaintiff should have pursued for his sensory neuropathy and worsening disc disease.  (D.I. 13 at 15 (citing *Jones v. Colvin*, No. 12 C 6151, 2015 WL 7568366, at *7 (N.D. Ill. Nov. 25, 2015))).  To the extent Plaintiff is arguing, without citation, that the ALJ was obligated to identify a more aggressive form of treatment, the Court disagrees.  By citing and discussing medical treatment records, the ALJ was rendering his decision on the record before him, not "play[ing] doctor and [drawing] his own conclusion regarding the appropriate level of treatment."  *Jones*, 2015 WL 7568366, at *7.  The ALJ was simply weighing the evidence in evaluating the intensity and persistence of Plaintiff's symptoms to determine the extent to which Plaintiff's symptoms limited his ability to work.  *See* 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you.").

Plaintiff next argues that the ALJ erred in failing to address statements made by Plaintiff in the December 2021 functional report (Exhibit 3E), statements that purportedly reflect "significant limitations with performing daily activities."  (D.I. 13 at 15-16 ("He spent the day controlling his level of pain and discomfort.  Campbell did no household chores.  He purchased food in an electronic cart.  He had pain with standing, kneeling, reaching, walking short distances, squatting and bending."); D.I. 16 at 6).  Yet the ALJ fully considered Plaintiff's statements regarding "claimant's alleged difficulty feeling their feet, having a severe limp, difficulty bending,

and inability to walk more than 15 minutes or sit more than five minutes comfortably." (Tr. at 36 (citing Exhibit 3E)).  Referring to Exhibit 3E several times, the ALJ considered Plaintiff's additional statements regarding his daily activities and pain associated with standing, kneeling, reaching, walking short distances, squatting and bending.  (*See id*. at 35 ("The claimant reported they had lumbar surgery in 2019 but continued with symptoms of left leg pain, inability to feel their feet, difficulty with bending or moving, atrophy in left leg, right leg weakness and severe limp." (citing Exhibit 3E))).  Those statements were contrasted with other medical evidence of record – namely, evidence of frequently normal gait, a low fall risk score, no objective evidence of strength deficits, and Plaintiff's own statement that he has "no problem" with personal care. (Tr. at 36).  This is not a case of the ALJ ignoring relevant or probative evidence.  Instead, the ALJ adequately analyzed and weighed Plaintiff's statements made in the functional report.  The Court will not reweigh the evidence.

Lastly, Plaintiff argues that the ALJ failed to address evidence regarding Plaintiff's calf muscle, sensory versus motor deficits and "pain, medication and efforts to alleviate pain." (D.I. 16 at 5-6 (citing Tr. at 728, 779, 796 and 874); *see also* D.I. 16 at 5 ("This is significant as the ALJ focuses on gait but does not address issues related to Campbell's chronic *pain*.")).  But the ALJ fully considered and addressed Plaintiff's calf muscle and sensory versus motor deficits, as well as his pain.  (*See, e.g.*, Tr. at 35 (noting Plaintiff's "longstanding left calf atrophy" and testimony that "with medication their pain scale is a 7 out of 10"), 36 (noting Plaintiff's "sensory greater than motor peripheral neuropathy with axonal and demyelinating features") & 37 (adding environmental limitation to residual functional capacity assessment because "this irritant could potentially exacerbate the claimant's pain symptoms")).  Contrary to Plaintiff's argument (D.I. 13 at 15-16), the ALJ did not "cherry pick" medical and other evidence of record to support his

15

conclusion.    Therefore, the ALJ's evaluation of Plaintiff's subjective symptoms meets the substantial evidence standard required by 42 U.S.C. § 405(g).

*        *        *

The Court has considered all of Plaintiff's grounds for remand and finds none of them persuasive.  The Commissioner's denial of disability benefits is supported by substantial evidence.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment (D.I. 12) is DENIED, and the Commissioner's cross-motion for summary judgment (D.I. 14) is GRANTED. The Clerk of Court is directed to close the case.

Dated:  March 31, 2026

_____
UNITED STATES MAGISTRATE JUDGE

16